# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | Bankr. Case No. 16-00091 |
| **Roberto Felice Donna,** | |
| Debtor. | |
| **JESUS VENTURA,** *et al.*, | |
| Plaintiffs-Appellants, | Adversary Proceeding No. 16-10026 |
| v. | Bankr. Appeal No. 17-2217 (TFH) |
| **ROBERTO DONNA,** | |
| Debtor-Appellee. | |

## <u>MEMORANDUM OPINION</u>

Appellants initiated an adversary proceeding against Roberto Donna in the United States Bankruptcy Court for the District of Columbia in September 2017. The Bankruptcy Court granted summary judgment Mr. Donna on all of Appellants' claims, and awarded him attorney's fees for his response to Appellants' motion for a protective order. Appellants have appealed the Bankruptcy Court's rulings.

## I.    BACKGROUND

Roberto Donna is a chef of Italian cuisine who has long worked in the Washington, D.C. area. AA at 716.  He was a majority owner of the Italian restaurant Galileo from 1984 until it closed in 2006. AA at 717-18 [ECF No. 5-1].  In 2006, he opened the restaurant Bebo Trattoria

("Bebo Trattoria" or "Bebo") in Arlington, Virginia. AA at 718. Bebo lost its lease and closed in April 2009. AA at 720.

Appellants Jesus Ventura, Mohammed Douah, Arturo Ramos, Bisera Romic, Carlos Sosaya, Dorde Milojevic, Igor Vuckovic, Marijana Bosnjak, Tulga Dorjgotov and Elizabeth Scott ("the Employees") were employees of Bebo Trattoria. They worked at the restaurant for lengths of time varying from 5 to 23 months, spanning January 2007 to December 2008. AA at 1287; 1293; 1295; 1298; 1300; 1302; 1305; 1310; 1312.

In 2008, a group of former Bebo Trattoria employees, including most of the Employees here, sued Roberto Donna, Bebo Foods, Inc. and RD Trattoria, Inc. for failing to pay minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the D.C. Wage Payment and Collection Law ("DCWPCL") when they were employed at Bebo Trattoria and Galileo. In 2010, the district court granted summary judgment to the former employees, finding that Mr. Donna violated the FLSA and the DCWPCL by failing to pay his employees wages and overtime. *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010) (*Ventura I*). After holding two hearings on damages, the court awarded the plaintiffs $526,893.16, including liquidated damages. *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 12 (D.D.C. 2010) (*Ventura II*). Mr. Donna was *pro se* during both the summary judgment briefing and the damages hearings.

Mr. Donna filed for Chapter Seven bankruptcy on March 2, 2016. In response, the Employees filed an adversary proceeding in the United States Bankruptcy Court for the District of Columbia seeking relief from the discharge of Mr. Donna's debts as it relates to their damages award in *Ventura II*. They sought relief pursuant to 11 U.S.C. § 526(a)(6), which excludes from discharge debts "for willful and malicious injury by the debtor to another entity," and pursuant to

2

11 U.S.C. § 523(a)(2)(A), which excludes from discharge debts "obtained by . . . false pretenses, false representation, or actual fraud."

The Bankruptcy Court granted summary judgment for Mr. Donna, finding that "the plaintiffs have not provided evidence to support their claims that the debtor intended to defraud, or knew any statements he made to the plaintiffs were false, or that the debtor caused a willful and malicious injury to the plaintiffs." *Ventura v. Donna (In re Donna)*, Bankr. No. 16-00091, Adv. No. 16-10026, 2017 WL 4457407, at *1 (Bankr. D.D.C. Sept. 27, 2017). The Employees seek review of that ruling on the grounds there are genuine disputes of material fact over whether Mr. Donna willfully and maliciously injured his employees under 11 U.S.C. § 523(a)(6) when he failed to pay them wages, tips, and overtime, and whether Mr. Donna's promises to pay his employees' wages, tips, and overtime constituted "false representations" under 11 U.S.C. § 523(a)(2)(A). They also seek review of the Bankruptcy Court's order granting attorney's fees to Mr. Donna for his response to their motion for a protective order in the adversary proceeding. AA at 1552-1556.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment decisions of the bankruptcy court are reviewed *de novo*, *United States v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995), and that review extends to both questions of law and fact, *In re Capitol Hill Group*, 447 B.R. 387, 393 (D.D.C. 2011). "Summary judgment in bankruptcy is governed by Bankruptcy Rule 7056, which incorporates the standard of Rule 56 of the Federal Rules of Civil Procedure: summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Bankr. P. 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings"); Local Bankr. R. 7056-1 (adopting major parts of LCvR 7(h)(1)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

At the summary judgment stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Although "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party," *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011), "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted," *Anderson*, 477 U.S. at 249-50.

B. <u>Discovery Sanctions</u>

Under Rule 37 of the Federal Rules of Civil Procedure, "the district court has broad discretion to impose sanctions for discovery violations." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996); *see also* Fed. R. Bankr. P. 7037 ("Rule 37 F.R.Civ.P. applies in adversary proceedings."). "[D]iscovery-related orders" are reviewed for "abuse of discretion, a 'narrowly circumscribed' scope of review." *Parsi v. Daioleslam*, 778 F.3d 116, 125 (D.C. Cir. 2015) (quoting *Lee v. Dep't of Justice*, 413 F.3d 53, 59 (D.C. Cir. 2005)). In reviewing discovery sanctions, the Court may reverse the Bankruptcy Court "only if . . . its actions were clearly unreasonable, arbitrary or fanciful." *Bonds*, 93 F.3d at 807 (internal quotation marks omitted).

## III.     THE FACTS IN THE RECORD

### A.     The Bankruptcy Court Did Not Have an Obligation to Review the Entire District Court Record.

As a preliminary matter, the Employees contend that the Bankruptcy Court should have reviewed the entire record that was before the district court in *Ventura I* and *Ventura II* (the "District Court") when ruling on Appellee's motion for summary judgment. Appellant Br. at 12 [ECF No. 5]. They note that the District Court conducted three evidentiary hearings and heard testimony from Mr. Donna, restaurant managers, and five of his employees, but contend that the Bankruptcy Court "failed to consider any of the facts from the District Court record which contravened Mr. Donna's self-serving declaration." *Id.* If the Bankruptcy Court had reviewed those facts, the Employees claim that it would have found that "Mr. Donna had not suffered from poor business decision-making, but had willfully and intentionally engaged in a pattern of wage theft, and then deliberately misrepresented to his employees that he would pay them . . . ." *Id.*

To support their argument, the Employees rely on *In re Makozy*, which similarly involved an adversary proceeding to block the discharge of debts stemming from an FLSA judgment. The *In re Makozy* court "look[ed] at the findings supporting the [d]istrict [c]ourt's conclusion that the actions were 'willful' under the FLSA" to determine whether the actions were willful under 11 U.S.C. § 523(a)(6). Appellant Br. at 12; *United States v. Makozy (In re Makozy),* Bankr. No. 13–25231, Adv. No. 13–2440, 2013 WL 9663062, *3 (Bankr. W.D. Pa. Sept. 9, 2014). *In re Makozy* differed from this case because there was no record before the *In re Makozy* court. The summary judgment filings did not include record citations or an appendix; instead, they referred entirely to the FLSA court's findings. *See* Makozy Br. in Supp. Mot. Summ. J. [ECF No. 37] & United States Br. in Supp. Mot. Summ. J. [ECF No. 39], *In re Makozy*, Adv. No. 13–2440-CMB. In

contrast, in this case, there was a record before the Bankruptcy Court containing evidence developed in both the adversarial proceeding and the FLSA case. *See, e.g.,* AA at 1062-1312.

The Bankruptcy Court did not have an obligation to depart from ordinary summary judgment procedures and review the parts of the District Court record that the parties did not cite in their summary judgment motions. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154; 151 (D.C. Cir. 1996) (stating in reference to Local Civil Rule 7h, which the Local Bankruptcy Rules have adopted, that the Court is "under no obligation to sift through the record" on summary judgment, and that the burden is "on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."). In their opposition to Mr. Donna's motion for summary judgment, the Employees had the responsibility to present all the evidence demonstrating a genuine dispute of material facts to the Bankruptcy Court. *See Celotex*, 477 U.S. at 324 (finding that Federal Rule of Civil Procedure 56(e) requires "the nonmoving party to "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (internal quotations omitted).

Although the Bankruptcy Court did not include specific citations to the record in its opinion, contrary to the Employees' assertions, it based its decision on facts in the record derived from the FLSA proceedings, including those unfavorable to Mr. Donna. *See, e.g., In re Donna*, 2017 WL 2017 4457407, at *2 (noting that "the debtor did not pay the plaintiffs all their wages, and often the plaintiffs would receive unsigned checks, checks that were postdated, or checks that would bounce . . . . When plaintiffs would ask the debtor to pay them, he would tell them that the company was having financial difficulty, but it was his intent to pay them in full.

Additionally, when employees threatened to leave, the debtor would ask them to stay promising to pay them when the restaurant had the money.").

As Mr. Donna argues, the Employees challenge the difference between the District and Bankruptcy Courts' characterizations of the evidence. They claim that the District Court found that "Mr. Donna *deliberately* disregarded his legal obligations to pay his employees and instead engag[ed] in a widespread illegal pay practice," Appellant Br. at 21, while the Bankruptcy Court disputed that finding and instead concluded that Mr. Donna's "repeated and flagrant violations" of D.C. and federal law were "simply a failing business man unable to pay his debts." *Id*; *compare Ventura II,* 738 F. Supp. 2d at 12, 31 (describing defendants' practice of "issuing checks without signatures, issuing post-dated checks, and issuing checks despite insufficient funds" as "*persistent and widespread*," and finding, in relation to determining money owed to Jesus Ventura from his time at Galileo, that "[p]laintiffs . . . have submitted ample evidence showing that defendants *deliberately* disregarded their legal obligations to pay their employees.") (emphasis added) *with In re Donna*, 2017 WL 2017 4457407, at *7 (concluding that "[t]he plaintiffs *do not show a widespread illegal payment scheme*.") (emphasis added). But they have not demonstrated why the Bankruptcy Court should be bound by the District Court's conclusions, especially given that the two courts were considering different causes of action—violations of wage laws versus exceptions to discharge under bankruptcy law. The District Court's conclusion that Mr. Donna "took a willful act to not pay the plaintiffs" does not equate to "proof that the debtor caused a willful injury." *In re Donna*, 2017 WL 2017 4457407, at *6; *see also Faria v. Silva (In re Silva)*, Bankr. No. 12-17413, Adv. No. 12-1274, 2014 WL 217889, at *10 (D. Mass. Jan. 21, 2014) ("[B]reach of an employment contract through failure to pay wages, by itself, is not enough to constitute a willful injury."). Furthermore, Mr. Donna, who is

now represented by counsel, has adduced support for his case, such as his inability to pay his employees, that may not have been relevant to the District Court litigation. For these reasons, the Bankruptcy Court did not err by relying only on the record before it in the adversary proceedings.

      B.   <u>Material Facts to Which There is No Genuine Dispute</u>

      Bebo Trattoria paid its employees irregularly, and distributed checks that were deficient in various ways—sometimes they were postdated, unsigned, made for zero dollars, or did not reflect the hours that employees worked. *E.g.,* AA at 1077-79 (Ventura Test.) (testifying that sometimes employees received paychecks every three weeks instead of every two weeks, that checks were not signed, and that he was not paid in total for about six weeks of work); AA at 1287 (Ventura Aff.) (paystubs did not reflect actual hours, check amounts were zero, checks were often post-dated); AA at 1298 (Romic Aff.) (paystubs did not reflect hours); AA at 1300 (Sosaya Aff.) (same); AA at 1293 (Douah Aff.) (paystubs did not reflect hours, check amounts were zero, checks were postdated); AA at 1453 (Dorjgotov Dep.); AA at 1295 (Ramos Aff.). Employees were often unable to cash their paychecks due to insufficient funds in Bebo's bank account. *E.g.,* AA at 1124 (Scott Test.) ("We would all go to the bank and stand in line and be told that our checks couldn't be cashed."); AA at 1380 (Sosaya Dep.) (testifying that employees had to "wait in line" and "whoever cash[ed] the check[s] first g[o]t the money. The rest of the people has[sic] to wait for probably one week, two weeks . . . Basically this happens most of the time, all the time."); AA at 1097 (Vuckovic Test.); AA at 1287 (Ventura Aff.); AA at 1293 (Douah Aff.); AA at 1453-54 (Dorjgotov Dep.). Employees did not receive some overtime payments, and some of their tip wages. *E.g.,* AA at 1300 (Sosaya Aff.); AA at 1302 (Milojevic Aff.).

When employees asked about their missing wages, Mr. Donna promised to pay them their full wages, but did not do so. *E.g.,* AA at 1296 (Ramos Aff. ¶¶ 14-15) ("During one conversation we had, Roberto Donna told me he was going to apply for a loan to pay everyone he owed unpaid wages. I don't know if he applied for or received the loan. Roberto Donna would promise to pay me my wages in 5-7 days or in a couple of weeks; sometimes he would pay me part of my wages but never the entire amount."); AA at 1298 (Romic Aff.) ("Roberto Donna said he had to pay Bebo's bills and was behind with payments; he promised to pay us in a few weeks but he never did"); AA at 1300 (Sosaya Aff. identical); AA at 1302 (Milojevic Aff. identical); AA at 706 (Ramos Test.) (agreeing that Mr. Donna explained to Mr. Ramos that business was bad and there was not enough money to pay the employees). Mr. Donna also stated that when "employees complained to me about the delay in payment or difficulty cashing certain checks, I acknowledged that Bebo had cash flow difficulties, that [Bebo] needed to pay the operating expenses of the restaurant, and that it was my intention that they receive their payments when funds became available." AA at 720 (Donna Decl.)

According to Arturo Ramos, who worked in a variety of positions at the restaurant, when he tried to work fewer shifts so that he could obtain employment elsewhere, one of the restaurant's managers, Corrado Bonino, told him that the restaurant would "pay only to the people who work full time here, not who works[sic] part time." AA at 1405; 1407-08 (Ramos Dep.). Ms. Scott, Bebo's director of marketing who also served as Mr. Donna's personal assistant, testified that Mr. Donna would threaten to "ruin [the] careers" of individuals who left the restaurant, and that he threatened to "pull [employees'] green cards or call immigration if they quit on him." AA at 1437-38 (Scott Dep.).

In order to finance Bebo, RD Trattoria, an entity Mr. Donna formed to operate the restaurant, obtained "hi-cost financing for working capital in the form of cash advances on future credit card sales." AA at 718 (Donna Decl.). The restaurant took out a "lump sum loan for working capital" from a financing company that managed the restaurant's credit card processing systems. *Id.* The financing company typically deducted 20% off the top of all credit card sales as payment towards the loan. *Id.* Within a few months after Bebo opened, Mr. Donna and his wife stopped receiving salaries from the restaurant. *Id.* at 719. He and his wife supported themselves by teaching cooking classes, cashed out their life insurance policies, and drew down their savings. *Id.* In the summer of 2007, Mr. Donna "obtained additional borrowed funds to help pay Bebo's debts by pledging [his] residence as collateral for an additional loan to RD Trattoria." *Id.* at 720 (Donna Dec.). Despite his "efforts to make Bebo a financial success, in April 2009, Bebo lost its lease and closed. By the time Bebo closed, its business had declined approximately 40% from its peak. Many of the business's records were lost when the landlord seized the premises." *Id.* By 2010, Mr. Donna had "lost [his] home and [his] Dupont Circle apartment based upon [his] personal guaranty of Bebo's business debts. [His] automobile had been repos[essed]." Mr. Donna and his wife moved in with his in-laws. *Id.*

In November of 2010, the State of Virginia filed a complaint against Mr. Donna, alleging that from November 2006 to approximately April 2009, Mr. Donna "withheld taxes from his employees and charged and collected the sales tax and held the money in trust for the Commonwealth of Virginia but used the money for his own purposes." AA at 1317-18. He pled guilty to the charge, and was ordered to pay restitution to the Commonwealth of Virginia Department of Taxation of $375,439.56, plus interest at 8% per year. AA at 1319-1322.

## IV.    ANALYSIS

### A.    There is a Genuine Dispute of Material Fact over Whether Mr. Donna Willfully and Maliciously Injured His Employees.

The Bankruptcy Court found that the Employees did "not provid[e] evidence to support their claims . . . that the debtor caused a willful and malicious injury" to them, and that they did not show that those injuries were attributable to Mr. Donna. *In re Donna*, 2017 WL 4457407, at *1. The Employees challenge the Bankruptcy Court's conclusions, and argue that there is a genuine dispute of material fact as to whether Mr. Donna willfully and maliciously injured the Employees under § 523(a)(6) when he failed to pay them minimum wages, tip wages and overtime wages. Appellant Br. at 3.

### 1.    11 U.S.C. § Section 523(a)(6)

A fundamental purpose of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (internal quotation marks omitted). "[E]xceptions to discharge are strictly and narrowly interpreted so as to promote the Bankruptcy Code's purpose of providing a fresh start to debtors." *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011). One such exception to the discharge of debts falls under § 523(a)(6), which "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The plaintiff must prove by a preponderance of the evidence that the debtor's actions were willful and malicious. *Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727, 729-30 (Bankr. D.D.C. 1998). The "willful" and "malicious" requirements must both be present.

2.     There is a Genuine Dispute of Material Fact as to Whether the Debtor
       Willfully Injured the Employees.

The Employees first assert that there is a genuine dispute of material fact as to whether

Mr. Donna "willfully" injured them. The Supreme Court has held that the "word 'willful' in [§

523](a)(6) modifie[s] the word 'injury,' indicating that nondischargeability takes a deliberate or

intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v.

Geiger*, 523 U.S. 57, 61 (1998). The "'willful injury requirement is met only when the debtor has

a subjective motive to inflict injury or when the debtor believes that injury is substantially certain

to result from his own conduct.'" *Jones v. Holland (In Re Holland)*, Bankr. No. 12-00496, Adv.

No. 12-10040, 2013 WL 2190164, at *4 (Bankr. D.D.C. May 21, 2013) (quoting *Carrillo v. Su

(In re Su)*, 290 F. 3d 1140, 1142 (9th Cir. 2002)). Failure to pay wages, even knowing the

consequences of that failure, does not alone rise to a "willful" injury. *In re Marcella*, 463 B.R. at

220.

The Bankruptcy Court concluded that the Employees did not demonstrate that Mr. Donna

caused a willful injury under § 523(a)(6) because they did not "provide any proof the debtor

intended to injure" the Employees, and because "[a]ll the facts indicated that the debtor wanted

to pay [the Employees], but could not." *In re Donna*, 2017 WL 4457407, at *6. According to the

Bankruptcy Court, "[t]he debtor provided [the Employees] checks in payment of wages and tips;

he just did not have the money in the bank to honor those checks," and Mr. Donna's payment of

business expenses before the Employees "does not indicate an illegal payment scheme." *Id.* at

*7. The Bankruptcy Court also found that there were no aggravating circumstances to support a

willfulness finding because there was "no evidence" that Mr. Donna had the money to pay his

employees but failed to do so. *Id.* at *9.

The Employees argue that Mr. Donna's "repeated failures to pay his employees in compliance with District of Columbia and federal law are sufficient to show an intent to injure or knowledge of substantial likelihood of injury." Appellant Br. at 21. They contend that "[b]oth the Ninth Circuit and Bankruptcy Court for the District of Massachusetts have found that employer wage theft is sufficiently willful and malicious that the resulting debt to employees be excepted from discharge." *Id.* 14-17 (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001) and *Oliveira v. Ruhland (In re Ruhland)*, Bankr. No. 11-19510, Adv. No. 11-1322, 2013 WL 1088737 (Bankr. D. Mass. Mar. 13, 2013)). They argue that the Court should hold that "Mr. Donna's deliberate practice of not paying his employees renders the judgment obtained by the the Employees excepted from discharge." *Id.* at 13. In response, Mr. Donna asserts that *Jercich* and *Ruhland* "do not hold that debts due to wage violations are by themselves willful injuries," but rather emphasize that a breach of an employment contract must be accompanied by intentional tortious conduct, such as diversion of company funds to personal use. Appellee Br. at 24-25.

The Court agrees with Mr. Donna that the willfulness inquiry involves an examination of the entire circumstances surrounding the non-payment of wages, not just the non-payment of wages itself. In *In re Jercich*, the Ninth Circuit found that a debtor who did not pay its employee as required by an employment agreement satisfied § 523(a)(6)'s willfulness standard where the debtor "knew he owed the wages to [the debtee] and that injury to [the debtee] was substantially certain to occur if the wages were not paid; and . . . had the clear ability to pay [the debtee] his wages, yet chose not to pay and instead used the money for his own personal benefit," including for a horse ranch. *In re Jercich,* 238 F.3d at 1208-1209. In doing so, the Ninth Circuit looked not only at the debtor's failure to pay, but also at other factors including the debtor's ability to pay

and his use of the money for personal benefit. Similarly, when faced with a debtor who owned a painting business and failed to pay his employee on multiple occasions, the court in *In re Ruhland* considered a number of factors when determining that the debtor willfully caused injury. *See In re Ruhland*, 2013 WL 1088737, at *11 (finding the debtor "willfully" injured his employee where he "did not maintain a checking account because of his history of insufficient funds checks; he admitted that he could not produce pay stubs or other contemporaneous records of what he owed the Plaintiff and other employees. His promises were made to induce the Plaintiff to continue working for him," and he received money from customers).

In order to determine willfulness, then, the Court will assess the aggravating factors surrounding the non-payment of wages, including whether the debtor had the ability to pay employees, whether the debtor did pay the employees, and whether the debtor used business income for personal purposes. *See also, e.g., In re Marcella*, 463 B.R. at 220-222 (finding no willful injury by examining factors such as a decline in business, checks returned for insufficient funds, the inability of the company to pay its creditors, and no diversion of company funds for personal expenditures).

   a)   The Bankruptcy Court Did Not Address Certain Aggravating Factors Raised by the Employees.

The Employees have raised aggravating factors that speak to willfulness that the Bankruptcy Court did not address. First, the Bankruptcy Court did not address the parties' dispute over whether Mr. Donna shared accurate wage information with his employees. Mr. Donna argues that "systematic measures" were taken to keep track of amounts owed to employees in unpaid tips and wages, citing a spreadsheet tracking accrued credit card tips to

employees and amounts owed.[1] Appellee Br. at 39 [ECF No. 7]. Some employees testified that they could keep track of the amounts Bebo owned them when they were not able to cash checks. AA at 688 (Ventura Dep.); AA at 679-80 (Douah Dep.) (Q: So you would know at the end of your shift how much you were entitled to receive based on the credit cards and the tips on the credit cards by printing out a record of the work that you had done and payments you had been credited that shift. Correct? A: Yes.")).

In contrast, Elizabeth Scott, Bebo's former director of marketing and Mr. Donna's personal assistant, stated that she believed that restaurant managers would, "with Mr. Donna's approval, intentionally avoid[] providing employees receipts in order to confuse them about their unpaid wages so they would not know exactly how much money they were owed."[2] AA at 1306 (Scott. Aff.). She also testified that "[i]t was pretty clear" that Mr. Donna and Bebo's managers "were confusing the matter" of employee wages because "employees would keep very accurate records, as did I, of the moneys owed. Every day you clock in and clock out, you get a chit that shows exactly what you're owed on your credit card receipts. . . . [b]ut the document that Corrado and Riccardo[3] and Roberto would work off of was an Excel spreadsheet that oftentimes showed far less monies owned than what the MICRO chits would say were owed to employees . . . ." AA at 1540; *see also id.* at 1541 ("[Mr. Donna] would keep their money and make it difficult for all of us to attempt to explain the amount of monies we were owed"). Similarly, Mr. Remos testified that he would "keep record of everything, my work time in, my tips, every single thing, even cents," and that biweekly sheets reflecting "the time that [he] work[ed] in the

---

[1] This spreadsheet is not included in the record before the Court but was in the record in the District Court proceedings. *Ventura II*, 738 F. Supp. 2d at 17.

[2] It is not apparent from the record whether Ms. Scott made this statement based on personal knowledge or hearsay. That will be a question for the Bankruptcy Court to decide when determining whether to admit her testimony on this issue.

[3] Corrado and Ricardo Bonino were both managers at Bebo.

restaurant . . . would only put like 70 hours" even though he was working "60 hours a week." AA at 1110. When he complained, "they would say they would fix it, but it did not—it didn't work because always they would send me to somebody else." *Id.* Furthermore, Mr. Phillip Proulx, Bebo's former accountant, testified that he received bi-weekly reports of tip wages earned, but did not receive reports of the wages that were paid to employees. AA at 1168 (Proulx Test.). This contradictory evidence demonstrates a genuine dispute over whether Mr. Donna shared accurate wage information with his employees and attempted to confuse them by concealing the amount of wages that Bebo owed them.

Second, although the failure to pay wages alone does not amount to willfulness, the Court cannot ignore the different methods Bebo used to avoid paying its employees. Bebo did not just issue checks without sufficient funds for them to be cashed, as might be expected from a company struggling to pay wages. Paystubs did not reflect hours worked, and checks were sometimes postdated, unsigned, or made for zero dollars. *E.g.,* AA at 1287 (Ventura Aff.); AA at 1298 (Romic Aff.); AA at 1300 (Sosaya Aff.); AA at 1293 (Douah Aff.). AA at 1077-79 (Ventura Test.); AA at 1453 (Dorjgotov Dep). There is no explanation in the record why employee paychecks were marred by these irregularities.

Third, there is unrefuted evidence that Mr. Donna threatened employees to keep them on staff. Ms. Scott testified that Mr. Donna "threatened to blackball us in the industry" if employees stopped working, and that "[h]e put it in writing to me." AA at 1437 (Scott Dep.). She claims that Mr. Donna would threaten to "ruin [the] careers" of individuals who left the restaurant, and that he threatened to "pull [employees'] Green Cards or call immigration if they quit on him." *Id.* at 1437-38.[4] Mr. Donna not only knew that his failure to pay his employees would injure them—

---

[4] Ms. Scott gave this testimony during the bankruptcy proceedings where Mr. Donna was represented by counsel. The Court does not see evidence in the record challenging whether Ms. Scott had

something every individual who fails to pay employees will know—but he also threatened their livelihood in order to force them to continue working for him.

> b) The Bankruptcy Court Properly Concluded that There Was No Evidence that Mr. Donna Spent Business Income on Personal Expenses.

The Bankruptcy Court found that the Employees "offered no evidence that the debtor used [their] money for personal use." *In re Donna*, 2017 WL 4457407, at *7. The Bankruptcy Court noted the "closest" the Employees came to providing evidence Mr. Donna used "wages or tip earnings on personal expenses" was Elizabeth Scott's testimony "that the debtor took lavish trips, bought a new computer, had a nice car and an expensive home." *Id*. The Bankruptcy Court concluded that "Scott's testimony is purely speculative, likely based on hearsay, and without a single shred of evidence of truth." *Id*.

In her role as personal assistant to Mr. Donna, Elisabeth Scott booked Mr. Donna's airfare, hotel, transportation and dinners. AA at 1434 (Scott Dep.). She described Mr. Donna as taking "very expensive" and "lavish trips to Italy and New York and around the world cooking." AA at 1433 (Scott Dep.); AA at 1126 (Scott test.). In an interrogatory response, Mr. Donna confirmed that between January 2005 and December 2010, he traveled to Thailand, Iceland, Italy and St. Barts. AA at 1360. According to Ms. Scott, some of the trips were paid for by others, but Mr. Donna paid for some on his credit card. AA at 1434, 685 (Scott Dep.). She could not recall how Mr. Donna paid for the trips he put on his credit card. AA at 685 (Scott Dep.). Ms. Scott also testified that Mr. Donna bought a computer for personal use. AA at 1439 (Scott Dep.).

---

personal knowledge that other employees were threatened when she gave this testimony. Whether her statements are based on personal knowledge or hearsay will be a question for the Bankruptcy Court to consider.

Ms. Scott's testimony as to Mr. Donna's home and car was speculative—she did not appear to have any knowledge about his assets and how he acquired them. Although she testified that she booked his travel arrangements in her role as personal assistant, she did not recall how he paid for the trips charged to his credit card. There is no other evidence supporting the Employees' assertion that Mr. Donna spent company funds on personal travel, such as credit card receipts showing the purchases or bank records demonstrating how Mr. Donna paid for them. Ms. Scott does not even specify whether he made the purchases on a corporate or personal credit card. As a result, is not reasonable to infer from Ms. Scott's statement that Mr. Donna paid for personal expenditures with income from his restaurant. Ms. Scott's testimony alone does not create a triable issue of fact.

There is no other evidence that Mr. Donna paid for personal expenditures with income from Bebo. The Court is not convinced that Mr. Donna's plea to embezzlement demonstrates that he used money withheld from his employees for personal use. The complaint in Virginia alleged that Mr. Donna "withheld taxes from his employees and charged and collected the sales tax and held the money in trust for the Commonwealth of Virginia *but used the money for his own purposes*." AA at 1318 (emphasis added). The Court infers that Mr. Donna was not paying his taxes or his employees. The plea alone is not enough evidence to support the inference, as the Employees assert, that Mr. Donna used the money for his own personal use rather than for business purposes.

c)     The Bankruptcy Court Properly Concluded that Mr. Donna Did Not Pay the Employees Because Bebo Struggled Financially.

The Court finds that it was proper for the Bankruptcy Court to infer that Mr. Donna struggled to pay his employees because Bebo lacked the funds to do so. Mr. Donna obtained high-cost financing for his restaurant that deducted 20% off all credit card sales, he stopped

18

withdrawing a salary within months after the restaurant opened, and he borrowed additional funds to finance the restaurant using his home as collateral for his debts. AA at 718-20 (Donna Decl.). Mr. Donna lost his home, an apartment, and his vehicle due to his personal guarantee of Bebo's debts. *Id.* at 20.

The Employees contend that "[n]owhere in the record is there a declaration from Mr. Donna that he was actually unable to pay his employees . . . . Mr. Donna instead just described 'cash flow difficulties," that business declined, and that he ended up closing his restaurant." Appellant Br. at 36. In response, Mr. Donna argues that the "hallmark for aggravating circumstances in a wage case has consistently been recognized as a failure to pay despite a company's financial ability to do so while at the same time the debtor diverted the funds for personal use." Appellee Br. at 26. He asserts that employees could not support their assertions that the restaurant could pay them, and "admitted they had [no] information regarding the actual finances of the restaurant. . . ." *Id.*

Although the Employees criticize Mr. Donna's failure to support his statement that "his restaurant was doing poorly or that he intended to pay his employees" aside from his "self-serving" declaration, that criticism is misplaced. Appellant Br. at 35; 11. The fact that Mr. Donna's affidavit serves his case is not in and of itself disqualifying—"evidence a party proffers in support of its cause will usually, in some sense, be 'self-serving.'" *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016). Rather, the Employees have the burden of contradicting Mr. Donna's assertions with "[their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). The Employees have not provided any evidence contradicting Mr. Donna's account of the restaurant's financial situation. They have not provided any evidence disputing Mr. Donna's efforts to make Bebo

Trattoria viable. They have not provided any evidence that Bebo, or Mr. Donna, had money to pay employees but did not do so. Employees who were queried did not know why they were not able to cash their checks and could not support their assertions that Mr. Donna had money that he was not paying them. *See, e.g.,* AA at 712 (Sosaya Dep.); AA at 1367 (Douah Dep.); AA at 678, 681 (Douah Dep.) (Q: But what I want to know is if you have any evidence to support your feeling that he has money somewhere. A: Just, I need my money from him. Q: That's all? A: That's all."); AA at 701 (Bosnijak Dep.) (Q: Miss Bosnjak, do you have any knowledge of why there wasn't enough money in the checking account to cover the checks you received? . . . A: Why? No."). Although two employees testified that the restaurant was busy, the Court agrees with the Bankruptcy Court's conclusion that a busy restaurant is not necessary equivalent to its economic well-being. *In re Donna*, 2017 WL 4457407, at *4; *see, e.g.,* AA at 1390 (Sosaya Deposition); AA at 1367 (Douah Aff.). It was reasonable for the Bankruptcy Court to infer from the evidence that Mr. Donna did not have adequate funds to pay his employees.

What to make of this evidence? The Bankruptcy Court concluded that "the debtor provided [the Employees] checks in payment of wages and tips; he just did not have the money in the bank to honor those checks," and that the facts did not demonstrate a "widespread illegal payment scheme." *In re Donna*, 2017 WL 4457407, at *7-8. However, there is unrefuted evidence that Mr. Donna threatened employees when they tried to leave, and there is a dispute over whether he tried to confuse employees about the amount of wages Bebo owed them. The Bankruptcy Court should have considered these aggravating factors in its decision, as they undermine its conclusions that "[a]ll the facts indicated that the debtor wanted to pay [the Employees], but could not," and that "[t]here is no indication that he wanted [the Employees] to be harmed." *Id.* at *6. Ultimately, these factors may not outweigh the undisputed evidence of Mr.

Donna's efforts to ensure his restaurant's financial success, and the lack of evidence that he made personal expenditures with income from the business. But they do raise legitimate, factual questions over whether Mr. Donna willfully injured his employees. Viewing the evidence "in the light most favorable to the nonmoving party" and "draw[ing] all reasonable inferences" in their favor, the Court finds that there is a genuine dispute of material fact over whether Mr. Donna willfully injured the Employees. *Talavera*, 638 F.3d at 308.

    3.  There is a Genuine Dispute of Material Fact over Whether the Debtor Maliciously Injured the Employees.

  The Employees next argue that there is a genuine dispute of material fact as to whether Mr. Donna "maliciously" injured them. "'A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Holland*, 2013 WL 2190164, at *4 (quoting *In re Jercich*, 238 F.3d at 1209). An injury is malicious if it "was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." 4 Collier on Bankruptcy § 523.12 (15th ed. 1996). "Malice, moreover, is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Nolan*, 220 B.R. at 730 (internal quotation marks omitted).

  The Bankruptcy Court concluded that there was "not a material dispute as to maliciousness" because "the debtor did not have sufficient funds to pay [the Employees]," and because the Employees offered no "admissible evidence to show that the debtor had the money to pay them, and chose to use that money on personal expenses or entertainment." *In re Donna*, 2017 WL 4457407, at *9. The Bankruptcy Court found that the facts showed that the "debtor tried to retain the services of his employees to improve everyone's situation." *Id.*

Based on the inferences the Court must make in favor of the non-movants on summary judgment, this case does not simply involve a debtor who was overly optimistic about the ability to pay his debts. There is a genuine dispute of material fact over whether the debtor intentionally harmed his employees, demonstrated by the disputed evidence that he tried to confused them about their wages, and the undisputed evidence that he threatened his employees when they sought to quit. For the same reasons that the Court found a genuine dispute of material fact as to willfulness, the Court also finds that there is a genuine dispute of material fact as to maliciousness.

4. There is a Genuine Dispute of Material Fact as to Whether the "Debtor" Caused the Willful and Malicious Injury.

Section 526(a)(6) requires that the willful or malicious injury be committed "by the debtor." 11 U.S.C. § 526(a)(6). It is "generally acknowledged that this statutory prerequisite means that a debtor cannot be held liable for the acts of third parties notwithstanding that nonbankruptcy law would impute liability to the debtor." *In re Frick*, 427 B.R. 627, 635 (N.D. Ohio 2010); *see also Palmour v. Budd (In re Budd)*, Bankr. No. 16-429, Adv. No. 16-10039, 2018 WL 312246, at *6 (Bankr. D.D.C. Jan. 3, 2018) (noting that liability "cannot be imputed to another person for purposes of nondischargeability of a debt under 11 U.S.C. § 523(a)(6)"). "At the same time, there is no requirement in § 523(a)(6) that a debtor actually be the one who physically occasions damage to a creditor or to a creditor's property." *In re Frick*, 427 B.R. at 635. "[L]iability for a 'willful' and 'malicious' injury may be imposed under § 523(a)(6) when the debtor directs or actively encourages another person to commit a wrongful act." *Id.*

The Bankruptcy Court found that the Employees failed to show that "the actions of the malicious injury deriv[ed] from the actions of the debtor, not his subordinates." *In re Donna*, 2017 WL 4457407, at *9. The Employees challenge this conclusion and argue that Mr. Donna's

22

own conduct injured his employees, pointing to the District Court's determination that Mr. Donna was personally liable for the wage violations. Appellant Br. at 25-26. In response, Mr. Donna argues that the Employees "conflate" the District Court findings that Mr. Donna could be personally liable for the actions of Bebo and its management under the wage statutes with liability under § 523(a)(6). Appellee Br. at 33. He argues that the Employees have provided no evidence that Bebo's failure to pay employees was "due to Mr. Donna encouraging or directing another to commit a willful and malicious act." *Id.* at 35.

The District Court found that Mr. Donna was personally liable for violations of the FLSA and DCWPCL because he qualified as an "employer" under both of those statutes. *Ventura I*, 738 F. Supp. 2d at 5. The District Court concluded that he was "an executive with significant ownership interest in the corporate defendants . . .[and] had the power to hire and fire, control work schedules and supervise employees, determine pay rates, and maintain employment records." *Id.* It also found that he "approved wage payments to plaintiffs, including the issuance of post-dated or unsigned checks, the payment of partial wages, and the withholding of any payment." *Id.* When employees complained about nonpayment of wages, "he informed them that he withheld wage payments . . . in order to pay Bebo Trattoria's past debts . . . ." *Id.*

The Employees provide no support for their assertion that this Court should be bound by the District Court's conclusions. They do not argue that collateral estoppel should apply to this issue.[5] Because the Court can see no other reason why it would be bound by the District Court's findings, the Court looks instead to the record before the Bankruptcy Court. On the one hand,

_____

[5] Before relying on collateral estoppel "to estop a party from relitigating an identical issue previously decided," a party must demonstrate that the issue was "actually litigated," was "actually and necessarily determined by a court of competent jurisdiction," and that it would "not work an unfairness" on the bound party. *Mexichem Fluor, Inc. v. Envtl. Prot. Agency*, 760 F. App'x 6, 9 (D.C. Cir. 2019) (internal quotation marks omitted).

Mr. Donna has submitted evidence demonstrating that Bebo's managers, Corrado and Ricardo Bonino, handled Bebo's finances as it related to employees. They have demonstrated that managers handled the hiring and payment of employees. *See* Appellee Br. at 35 (citing AA at 1119) (Scott Test.) (stating that "Corrado handled the money," would "hand the cash" to employees and that "[h]e and Ricardo . . . oversaw payment of the bills or were supposed to when they were getting paid.")); AA at 1004 (Dorjgotov Dep.) (stating that she interviewed with a manager, not Mr. Donna). In his declaration, Mr. Donna also asserted that he "focused on Bebo's cuisine and delegated most financial matters to managers," and that managers "oversaw the accounts and determine[d] what payments to make and when based on the cash available to the business, including issuing checks utilizing a stamp for [his] signature." AA at 719 (Donna Decl.).

On the other hand, the Employees have presented evidence that Mr. Donna was involved with financial payments to employees. Jesus Ventura, one of Mr. Donna's long-serving employees, stated that he knew that Mr. Donna gave Bebo's managers instructions about issuing checks, and that Mr. Donna would determine when to issue paychecks.[6] AA at 1078 (Ventura Dep.). Furthermore, Ms. Scott testified that when she and other employees would ask Mr. Donna about unpaid wages, "he would communicate to us in person that he would . . . discuss it with Corrado and make sure that we got paid." AA at 1539 (Scott Dep.). Other testimony indicates that Mr. Donna was involved in the payment of wages. AA at 1306 (Scott Aff.) ("Mr. Donna approved payments of wages to staff but either Corrado Bonino or Ricardo Bonino would provide staff with checks."); AA at 1310 (Vuckovic Aff.) (stating that Mr. Donna would explain

---

[6] It is unclear from the record whether Mr. Ventura made this statement based on personal knowledge. This will be another question for the Bankruptcy Court when considering whether to admit this testimony as to this issue.

to employees that he was unable to pay their salaries because "it was the first of the month and he had to pay off past debts or pay the restaurant's utilities."); AA at 1296 (Ramos Aff.) ("If I was not at the restaurant on a pay day I would not be issued a pay check because Roberto Donna and Corrado Boninio would split up the money they had amongst the employees in the restaurant that day."); AA at 1295 ("We were told by Roberto Donna and Corrado Bonino, the accountant, the balance [of checks] was zero to account for taxes being paid."); AA at 1114 (Ramos Test.) ("I will go to Corrado and Corrado [would] say I cannot give you checks because Roberto Donna is not here . . . you have to speak to him."). The Employees also presented evidence that Mr. Donna was involved in decision-making on payments to vendors, which contradicts his assertion that he delegated financial matters to managers. AA at 1120-21 (Scott. Test.) ("Roberto had full knowledge of all vendors that were owed money and helped—played a part in deciding—on the occasions where I was witness to that, he was the deciding factor on who got paid when.").

Finally, Ms. Scott also testified that Mr. Donna himself "threatened to blackball us in the industry" if employees stopped working, that he "threatened to ruin our careers," and that "[h]e put it in writing to me." AA at 1541 (Scott Dep.). She also testified that he "threatened to pull" employee Green Cards "or call immigration if they quit on him," and that the "threats were real." *Id.* at 1542.

These contrasting narratives demonstrate that there is a genuine dispute of material fact over whether Mr. Donna managed Bebo's finances, was personally involved in confusing employees about their wages, and threatened employees. As such, the Court concludes that there is a genuine dispute of material facts as to whether Mr. Donna himself willfully and maliciously injured the Employees.

B.  There is No Genuine Dispute of Material Fact Over Whether Mr. Donna Made False
    Representations to the Employees.

    1.    11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code "does not discharge an individual debtor

from any debt for money, property, [or] services . . . to the extent obtained by . . . false pretenses,

a false representation, or actual fraud, other than a statement respecting the debtor's or

an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "The burden of proof is on a plaintiff

to establish by a preponderance of the evidence the elements of nondischargeability under §

523(a)(2)(A)." *Osoyande v. Momoh (In re Momoh)*, Bankr. No. 14-00291, Adv. No. 14-10034,

2016 WL 270155, *1 (Bankr. D.D.C. Jan. 20, 2016).  In order to establish nondischargeability

under § 523(a)(2)(A), the Employees must establish the following:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
> (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3)
> an intent to deceive; (4) justifiable reliance by the creditor on the debtor's
> statement or conduct; and (5) damage to the creditor proximately caused by its
> reliance on the debtor's statement or conduct.

*In re Holland*, 2013 WL 2190164, at *3 (citation omitted).  "A promissory representation, or a

representation as to future events asserted in a common law fraud action, should only be

considered a misrepresentation of fact where the evidence shows that the promise was made

without the intent to perform, or that the promisor had knowledge that the events would not

occur." *In re Momoh*, 2016 WL 270155, at *1 (citations omitted). "The mere breach of a promise

is never enough in itself to establish fraudulent intent. It may, however, be inferred from the

circumstances, such as the defendant's insolvency or other reason to know he cannot pay . . . or

his failure to even attempt performance, or his continued assurances after it is clear that he will not do so."[7] *Id.*

The Bankruptcy Court found that the evidence did not show that "the debtor had the intent to defraud or knowledge that his representations that he would pay [the Employees] were false." *In re Donna*, 2017 WL 4457407, at *3. Rather, it found that Mr. Donna "was undergoing economic difficulty due to a perfect storm of bad circumstances," including loosing "a prime location, due to the building housing his restaurant, Galileo, undergoing renovation," and due to his failed attempts to "create financial stability for Bebo," including taking out a loan to "pay the financial needs of Bebo, laying his house down as collateral." *Id.* It found that "[h]e and his wife stopped taking a salary from Bebo," and that he "tried to keep his employees, so the restaurant could continue to provide service to the clientele it had." *Id.* The Bankruptcy Court concluded that "[t]hese actions are not actions of a man trying to defraud his employees, but are the actions of a man trying to rebuild his business so he and his employees could all benefit economically." *Id.*

The Employees argue that Mr. Donna's and his managers' repeated promises to pay employee wages, tip minimum wage, and overtime were "false representations" because "they were aware that it was unlikely the [e]mployees would be paid." Appellant Br. at 27. According to the Employees, Mr. Donna did not intend to fulfill his promises because he knew Bebo was insolvent, citing an admission he made in litigation in the Eastern District of Virginia that he "became aware that the restaurant's expenses exceeded its income." AA at 1330, 1341. The

---

[7] The Employees rely on *In re Flakker* to assert that promises to pay owed wages or debts are misrepresentations under the statute. Appellant Br. at 27. However, as Mr. Donna correctly notes, *In re Flakker* actually states that the conduct falls within § 523(a)(2)(A) "when a debtor misrepresents his intent to repay a debt." *Flakker v. Flakker (In re Flakker)*, Bankr. No. 14-00340, Adv. No. 14-10037, 2015 WL 4624545, at *3 (Bankr. D.D.C. Aug. 3, 2015) (citations omitted).

Employees also argue that the question of Mr. Donna's intent should not have been resolved on summary judgment, and that instead of holding a hearing to judge his credibility, the Bankruptcy Court "took it upon [it]self to determine, despite the existence of a dispute of fact, that Mr. Donna's repeated promises were not deceptive because he did not supposedly know that he could not pay his employees." Appellant Br. at 28.

The Court agrees with the Bankruptcy Court's conclusion that "the evidence does not show the debtor had the intent to defraud or knowledge that his representations that he would pay [the Employees] were false." *In re Donna*, 2017 WL 4457407, at *3. There is no evidence that Mr. Donna did not intend to pay employees when he made promises to them. The Employees do not identify which of Mr. Donna's statements were false, when exactly he made them, and how the timing of those statements relates to his knowledge about the health of the business. *See In re Silva*, 2014 WL 217889 at *8 (finding that a debtor misrepresented his intent to repay a loan where "at the time he promised to repay" the loan, his "personal and business finances were on the verge of collapse."). When employees asked Mr. Donna about their wage payments, he indicated that the restaurant was struggling, and that he would make efforts to pay them. *See, e.g.,* AA at 1295 (Ramos Aff.).

The Employees have not provided any evidence related to either Bebo's or Mr. Donna's finances, and they have not contradicted Mr. Donna's evidence regarding Bebo's financial failings and the efforts Mr. Donna took to ensure its survival. As Mr. Donna argues, the Court cannot consider Mr. Donna's admission that he knew Bebo's expenses exceeded its income because he made it pursuant to Federal Rule of Civil Procedure 36, which provides that "an admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding." Fed. R. Civ. P. 36(b); Appellee Br. at 42, n.19. Even if it

could, the Court is not persuaded that Mr. Donna's admission meant that he misrepresented that he would pay his employees—there is no evidence indicating when Mr. Donna knew the restaurant's expenses exceeded its income. Moreover, as the Bankruptcy Court discussed, there is undisputed evidence that Mr. Donna took steps to ensure Bebo's success, including securing a loan with his home as collateral. AA at 720 (Donna Dec.). There is also undisputed evidence that Bebo's business declined 40% from its peak business by the time it closed. *Id.*

Although the Employees argue that Bebo did not keep track of hours worked or compare Bebo's wage payments with minimum wage requirements, the record does not support this assertion. Appellant Br. at 30. Evidence that employee paystubs did not accurately reflect hours worked does not equate to evidence that the restaurant did not track hours. Meanwhile, Mr. Donna has cited evidence that Bebo did track employee tip wages owed and paid, indicating that Mr. Donna intended to pay his employees. Appellee Br. at 39.

As the Bankruptcy Court acknowledged, "'[b]ecause the question of intent is inherently fact-based, it is an issue more appropriately resolved by the finder of fact.'" *In re Donna*, 2017 WL 4457407 at *3 (quoting *In re Flakker*, 2015 WL 4624545, at *3). But the "'summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion'" for summary judgment. *United States v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 346-47 (D.D.C. 2012) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir. 1985)). The Employees had the opportunity to depose Mr. Donna in this litigation and to test the veracity of his assertions about both his and Bebo's finances, but did not appear to do so. They also did not present any other evidence related to either his or Bebo's finances, which could have provided circumstantial evidence of his intent. *See, e.g., In re Silva*, 2014 WL 217889 at *8 (considering a debtor's negative bank account

balances, checks returned for insufficient funds and his low income reflected in his tax returns when concluding that he misrepresented his intent). As a result, they failed to "'shake' the defendant's version of the facts or to raise significant issues of credibility . . . ." *Corrugated Paper Prods., Inc.* v. *Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989). Without evidence of Bebo's finances, they did not "'put credibility in issue so as to preclude summary judgment.'" *Desia v. GE Life & Annuity*, No. 05-1395, 2008 WL 4724080, *7 (D. Conn. Oct. 24, 2008) (quoting 10A Wright & Miller, Fed. Practice and Procedure § 2726 (4th ed. 1998)).

The Employees also argue that Mr. Donna's promises to pay hourly employees tip minimum wage and overtime were misrepresentations because he recklessly disregarded his obligations to pay his employees under the law. Appellant Br. at 29-30. There is evidence that Bebo never paid some employees overtime wages. AA at 1287 (Ventura Aff.); AA at 1305 (Scott Aff.); AA at 1310 (Vuckovic Aff); AA at 1295 (Ramos Aff.). However, to prove a misrepresentation, the Employees must demonstrate that Mr. Donna made a promise without intending to perform it, or with knowledge that the events would not occur—not that the he recklessly disregarded wage obligations. *See In re Chang Sup Han*, 13-cv-1524, 2013 WL 3404321, at *3 (C.D. Cal. July 8, 2013) (describing § 523(a)(2)(A) as requiring that a plaintiff establish "by a preponderance of the evidence that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false.") (internal quotation marks omitted). The Employees have not demonstrated that Mr. Donna did not intend to pay his employees overtime.

The Employees have not shown a genuine dispute of material fact as to whether Mr. Donna made false representations. The Bankruptcy Court appropriately granted summary judgment on this claim.

C.   The Bankruptcy Court Did Not Abuse Its Discretion When It Awarded Attorney's Fees to Mr. Donna.

During discovery in the bankruptcy proceedings, Mr. Donna served interrogatory and document requests seeking information related to the Employees' employment with Mr. Donna's restaurants such as employment agreements, job duties, title, wages and hours worked. AA at 126-393. The Employees moved for a protective order on the grounds that the discovery requests were beyond the scope of the case and sought information Mr. Donna could have obtained in the District Court litigation. AA at 118-127. They responded to the document requests but refused to respond to any interrogatories until the Bankruptcy Court ruled on their motion for a protective order. AA at 417.

The Bankruptcy Court denied the motion for a protective order on the grounds that the interrogatory requests focused on issues at the "heart" of the adversary proceeding, that the District Court had not adjudicated the issues, and that collateral estoppel did not apply. AA at 422. After the Bankruptcy Court denied the motion, Mr. Donna moved for attorney's fees under Federal Rule of Civil Procedure 26(c)(3). AA at 431-448. The Bankruptcy Court granted in part Mr. Donna's motion on the grounds that the Employees' motion for a protective order as to the interrogatories was not substantially justified, and awarded Mr. Donna 62.5% of the fees he sought. AA at 1552-1556. The Bankruptcy Court found that the Employees "improperly refused to provide responses to [Mr. Donna's] discovery requests that were not in dispute." AA at 1552. It further found that there was "no need" for the Employees to file a motion for a protective order because they could have raised their contentions "that discovery as to generic employment information (a miniscule part of the discovery requests) sought information already produced" in the District Court litigation "in their responses to the discovery requests." AA at 1553.

Federal Rule of Civil Procedure 26(c)(3) "incorporates [Federal Rule of Civil Procedure] 37(a)(5) and states that if the court denies a motion for a protective order, the court 'must, after giving an opportunity to be heard, require the movant . . . to pay' the opposing party's expenses and attorney's fees." *Jones v. Dufek*, 830 F.3d 523, 528 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 37(a)(5)(B).[8] However, "' the court must not order this payment if the motion was substantially justified . . .'" *Id.* A party meets the "substantially justified" standard if there "is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

The Employees argue that the Bankruptcy Court "missed the point" of the Employees' motion, which was to "limit the scope of discovery to the specific issues that were subject to the adversary proceeding." Appellant Br. at 39. They argue that just because the Bankruptcy Court took a different view on the scope of discovery does not mean that the Employees were not substantially justified in filing their motion. Appellant Br. at 39.

Although a majority of Mr. Donna's interrogatories related to the Employees' allegations of willfulness and misrepresentations, the Employees filed a motion for a protective order over a small amount of generic employment information and refused to respond to the rest of the relevant interrogatories. The Bankruptcy Court found that the motion was not substantially justified because the Employees could have raised their objections to the discovery in their responses to the interrogatory requests instead of refusing to respond to them and filing the motion. AA at 1553. Although the "substantially justified" standard allows room for reasonable differences of opinion, the Bankruptcy Court's decision was not "clearly unreasonable, arbitrary,

---

[8] Federal Rule of Civil Procedure 26 applies in adversary proceedings. Fed. R. Bankr. P. 7026.

or fanciful." *Bonds*, 93 F.3d at 807 (internal quotation marks omitted). This is especially true in light of Rule 26(c)(3)'s goal to "prevent needless litigation and wasteful discovery disputes." *Jones*, 830 F.3d at 529.

Furthermore, the Bankruptcy Court did not base its decision on incorrect facts, as the Employees claim. Reply at 21 [ECF No. 8]. It found that the Employees refused to respond to the discovery requests that "were not in dispute." AA at 1552. The Employees did not respond to any interrogatory requests, even those expressly focused on willfulness and misrepresentations. The Bankruptcy Court did not abuse its discretion when it awarded partial attorney's fees to Mr. Donna for his response to the Employees' motion for a protective order.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's ruling as to whether Mr. Donna willfully and maliciously injured his employees under 11 U.S.C. § 523(a)(6) will be REVERSED AND REMANDED for further proceedings before the Bankruptcy Court. The Bankruptcy Court's ruling that Mr. Donna's promises to pay his employees did not constitute misrepresentations under 11 U.S.C. § 523(a)(2)(A), and its award of attorney's fees to Mr. Donna, will be AFFIRMED. An order accompanies this memorandum opinion.

October 28th 2019

Thomas F. Hogan
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE